# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

CHRISTOPHER R. CUMMINGS,

                Petitioner,

v.

UNITED STATES OF AMERICA,

                Respondent.

Case No. 15-CV-1219-JPS

ORDER

On October 13, 2015, the petitioner, Christopher Cummings, filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Docket #1). That § 2255 motion rests upon Mr. Cummings' contention that his sentence is no longer appropriate in light of the Supreme Court's decision in *Johnson v. United States*, --- U.S. ----, 135 S.Ct. 2551 (2015). More specifically, Mr. Cummings argues that following *Johnson* he is not a career offender under the United States Sentencing Guidelines.

The parties have fully briefed the motion (Docket #1, #4, #7), and the Court will now decide it. In doing so, the Court first provides relevant background as to both Mr. Cummings' underlying conviction and the state of the law in light of *Johnson*. It then describes the parties' respective positions before substantively analyzing the issues presented in the case. Ultimately, the Court must deny Mr. Cummings' § 2255 motion.

1.      FACTUAL BACKGROUND

On August 15, 2006, a grand jury returned an indictment against Mr. Cummings. That indictment contained three separate charges of distribution

of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), all against Mr. Cummings, alone. (Case No. 06-CR-199, Docket #1).[1]

Mr. Cummings pled guilty to Count Three in exchange for dismissal of the remaining two counts at the time of sentencing. (Case No. 06-CR-199, Docket #14 ¶¶ 4, 8; Case No. 06-CR-199, Docket #17). The plea agreement provided that the Government would be able to establish by a preponderance of the evidence that the drug quantity attributable to Mr. Cummings was 7.4 grams of cocaine. (Case No. 06-CR-199, Docket #14 ¶ 16).

Prior to sentencing, the Probation Department prepared a presentence report, in which it determined that Mr. Cummings was a career offender under the applicable guidelines, which had two effects on the guidelines applicable to Mr. Cummings. (*See* Case No. 06-CR-199, Docket #19 at 5–7). First, and of little importance, the career-offender designation required that Mr. Cummings be placed in criminal history category VI, pursuant to U.S.S.G. § 4B1.1. (*See* Case No. 06-CR-199, Docket #19 ¶ 20). That aspect of the career-offender designation is of little importance because, even without it, Mr. Cummings would still have been placed in criminal history category VI. (*See* Docket #36 at 3; Case No. 06-CR-199, Docket #19 at 7–8). Second, and much more important, the career-offender designation set the base offense level for Count Three at 34. (*See* Case No. 06-CR-199, Docket #19 at 5–7). Without the career-offender designation, Count Three's base offense level would have been 12. (*Id.*) That disparity in base offense level meant the

---

[1]Because the Court must cite to portions of the docket sheet in both this case and in Mr. Cummings' underlying criminal case, it will include a reference to the criminal case number ("Case No. 06-CR-199") in all citations to the criminal case record. Where the Court does not reference a case number in its citation, it is citing to the record in the instant action (Case No. 15-CV-1219, which regards Mr. Cummings § 2255 motion).

difference between, on one hand, a guideline range of 24–30 months applicable in the absence of the career-offender designation, and, on the other, a guideline range of 188–235 months applicable in light of the career-offender designation. (*Id.*; Case No. 06-CR-199, Docket #20 at 4–7).

Mr. Cummings understandably objected to his designation as a career offender. (Case No. 06-CR-199, Docket #19 at 5–7; Case No 06-CR-199, Docket #20 at 4–7). In doing so, Mr. Cummings identified the three separate requirements to be found a career offender:

(1)     he was at least 18 when he committed the instant offense;

(2)     the instant offense was either a crime of violence or controlled substance offense; and

(3)     he had two prior felony convictions for either crimes of violence or controlled substance offenses.

U.S.S.G. § 4B1.1(a). He conceded that the first two requirements were satisfied. He was at least 18 when he committed the crime charged in Count Three, which was a controlled substance offense. (Case No. 06-CR-199, Docket #19 at 5–6). He also conceded that he had *one* prior felony conviction for a controlled substance offense, specifically, a state conviction for possession with intent to deliver cocaine. (*Id.* at 6).

Mr. Cummings, however, did not concede that he had a second felony conviction for a crime of violence. (*See id.*) Instead, he pointed out that his only prior conviction that could possibly constitute the required second conviction was a state conviction for Discharging a Firearm from a Vehicle, in violation of Wis. Stat. § 941.20(3)(a). (Case No. 06-CR-199, Docket #19 at 6). And that conviction, Mr. Cummings argued, did not qualify as a crime of

violence under U.S.S.G. § 4B1.2(a).[2] (Case No. 06-CR-199, Docket #19 at 6–7). Mr. Cummings pointed out that the elements of Wis. Stat. § 941.20(3)(a) did not include, "as an element the use, attempted use, or threatened use of physical force against the person of another," U.S.S.G. § 4B1.2(a)(1). (*See* Case No. 06-CR-199, Docket #19 at 7). Accordingly, Mr. Cummings' conviction could not satisfy the provisions of U.S.S.G. § 4B1.2(a)(1), known as the "force clause" or "elements clause" (hereinafter, the Court will refer to this as the "force clause"). (Case No. 06-CR-199, Docket #19 at 7). Likewise, a conviction under Wis. Stat. § 941.20(3)(a) could not possibly be one for "burglary of a dwelling, arson, or extortion," and also could not "involve[ ] use of explosives," U.S.S.G. § 4B1.2(a)(2). (*See* Case No. 06-CR-199, Docket #19 at 7). Thus, Mr. Cummings' conviction could not satisfy the first clause of U.S.S.G. § 4B1.2(a)(2). (Case No. 06-CR-199, Docket #19 at 7).

That left only the "residual clause" of U.S.S.G. § 4B1.2(a)(2) as a possible basis for classifying Mr. Cummings' Wis. Stat. § 941.20(3)(a) conviction as a "crime of violence." The residual clause provides that a felony

---

[2] The Court notes that the United States Sentencing Commission has proposed changing the language of U.S.S.G. § 4B1.2(a), in order to comply with the concerns identified by the Supreme Court in *Johnson*. *See* UNITED STATES SENTENCING COMMISSION, Proposed Amendment to Sentencing Guideline 4B1.2(a) (August 7, 2015) (available online at: http://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20150807-RFP-Amendments.pdf). The Sentencing Commission unanimously approved that proposed amendment in August of 2015 and adopted it on January 8, 2016; it is now subject to a comment period, after which it will presumably take effect. *See* UNITED STATES SENTENCING COMMISSION, *U.S. Sentencing Commission Adopts Amendment to Definition of "Crime of Violence" in Federal Sentencing Guidelines and Proposes Additional Amendments* (Jan. 8, 2016) (available online at: http://www.ussc.gov/news/press-releases-and-news-advisories/january-8-2016). The Court's references to the Sentencing Guidelines, however, are entirely to the way in which they were written at the time of Mr. Cummings' sentencing.

conviction is for a crime of violence if it "otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2). Mr. Cummings argued that, if the Court were to review the complaint and plea colloquy regarding Mr. Cummings' conviction under Wis. Stat. § 941.30(3)(a), it should not conclude that the conviction satisfied the residual clause. (Case No. 06-CR-199, Docket #19 at 7).

The Court disagreed with that argument. At Mr. Cummings' sentencing hearing, the Court held that Mr. Cummings' Wis. Stat. § 941.30(3)(a) conviction constituted a crime of violence under the residual clause. (*See* Case No. 06-CR-199, Docket #34 at 9:1–11:1). Accordingly, the Court treated Mr. Cummings as a career offender subject to a criminal history category of VI and a base offense level of 34. (Case No. 06-CR-199, Docket #34 at 16:2–10). After adjusting the offense level to account for Mr. Cummings' acceptance of responsibility, the Court determined that Mr. Cummings was subject to the following relevant guidelines:

> Offense Level: 31
> Criminal History Category: VI
> Guideline Term of Imprisonment: 188–235 months

(*Id.*)[3] And, after considering those guidelines together with the arguments of the parties, the Court ultimately sentenced Mr. Cummings to 180 months imprisonment and entered judgment accordingly. (Case No. 11-CR-199, Docket #28).

---

[3]If the Court had reached the opposite conclusion, Mr. Cummings would have been subject to the following relevant guidelines:

> Offense Level: 10
> Criminal History Category: VI
> Guideline Term of Imprisonment: 24–30 months

(See Case No. 06-CR-199, Docket #20 at 5).

Case 2:15-cv-01219-JPS   Filed 02/29/16   Page 5 of 36   Document 9

Mr. Cummings did not directly appeal the judgment against him (Case No. 06-CR-199, Docket #29), nor did he earlier file a § 2255 motion, despite having requested permission to do so (*see* Case No. 06-CR-199, Docket #31, #32). It was not until after the Supreme Court issued *Johnson*, in June of 2015, that Mr. Cummings filed the § 2255 motion now before the Court.[4]

## 2.    *JOHNSON* AND RESULTING DEVELOPMENTS IN THE LAW

However, more than eight years after Mr. Cummings' judgment became final, the Supreme Court decided *Johnson*. As a result, the Court's earlier designation of Mr. Cummings as a career offender for purposes of the guidelines may no longer be appropriate in light of *Johnson* and developments in Seventh Circuit law.

The Court begins with *Johnson*, which held unconstitutionally vague the residual clause found in the Armed Career Criminal Act's ("ACCA") definition of "violent felony," 18 U.S.C. § 924(e)(2)(B)(ii). 135 S.Ct. at 2563. The ACCA's residual clause provided that a violent felony is "any crime punishable by imprisonment for a term exceeding one year…that…otherwise

---

[4]Typically, a strict one-year statute of limitations applies to § 2255 motions. *See* 28 U.S.C. § 2255(f). Mr. Cummings would fall outside of that limitations period if not for the provisions of 28 U.S.C. § 2255(f)(3), which provides that the one-year limitations period may start running from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." As the Court will discuss further, below, the Government argues that, while *Johnson* announced a retroactively-applicable right in relation to the ACCA, it did not do so in relation to the guidelines. The Government argues that, for that reason, Mr. Cummings is not entitled to relief on his § 2255 motion. Thus, the timeliness analysis is subsumed into that merits analysis: if the Supreme Court made *Johnson* retroactively-applicable to the guidelines, then Mr. Cummings' motion is timely under 28 U.S.C. § 2255(f)(3). *See* Section 4.2., *infra*, for further discussion on this retroactivity issue.

involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). The Supreme Court found that the residual clause "leaves grave uncertainty about how to estimate the risk posed by a crime," and "about how much risk it takes for a crime to qualify as a violent felony." 135 S.Ct. at 2557–58. The Supreme Court had attempted to interpret the residual clause in four earlier cases, reaching differing results. *James v. United States*, 550 U.S. 192 (2007) (Florida's attempted-burglary offense is a violent felony under residual clause); *Begay v. United States*, 553 U.S. 137 (2008) (New Mexico's driving-under-the-influence offense is *not* a violent felony under the residual clause); *Chambers v. United States*, 555 U.S. 122 (2009) (Illinois' failure-to-report-to-a-penal-institution offense is *not* a violent felony under the residual clause); *Sykes v. United States*, 564 U.S. 1 (2011) (Indiana's vehicular-flight-from-a-law-enforcement-officer offense is a violent felony under the residual clause). After dissenting opinions suggested that the residual clause be held unconstitutionally vague in *Chambers*, 550 U.S. at 230 (Scalia, J., dissenting) and *Sykes*, 564 U.S. at ----, 131 S.Ct. 2267, 2276–77, the *Johnson* majority adopted that position, 135 S.Ct. at 2563.

But there are a number of gaps between *Johnson* and this case. First, *Johnson* involved a criminal defendant's direct appeal of his conviction, whereas Mr. Cummings' case comes before the court on collateral review. Second, *Johnson* concerns an entirely different law than the one at issue, here; *the ACCA*'s residual clause was at issue in *Johnson*, whereas *the guidelines'* residual clause is at issue in this case.

Post-*Johnson* developments in the law have helped fill those gaps.

Case 2:15-cv-01219-JPS   Filed 02/29/16   Page 7 of 36   Document 9

First, as to the applicability of *Johnson* on collateral review, the Seventh Circuit held that *Johnson* announced a new substantive rule of constitutional law that is "categorically retroactive to cases on collateral review." *Price v. United States*, 795 F.3d 731, 734 (7th Cir. 2015).[5]

And, second, the Seventh Circuit has authorized several successive § 2255 motions challenging the guidelines' residual clause on the basis of *Johnson*, at least implying that the question of *Johnson*'s retroactive applicability to the guidelines' residual clause remains open. *See, e.g., Best v. United States*, No. 15-2417, Docket #2 (7th Cir. Aug. 5, 2015); *Stork v. United States*, No. 15-2687, 2015 WL 5915990, at *1 (7th Cir. Aug. 13, 2015) ("*Stork I*"); *Swanson v. United States*, No. 15-2776, Docket #5 (7th Cir. Sep. 4, 2015); *Zollicoffer v. United States*, No. 15-3125, Docket #4 (7th Cir. Oct. 20, 2015); *Spells v. United States*, No. 15-3252, Docket #9 (7th Cir. Oct. 22, 2015). This makes logical sense, because the residual clause of both the ACCA and the guidelines are practically identical. Indeed, the Seventh Circuit has "interpreted both residual clauses identically," and noted that it is proceeding on the assumption that *Johnson*'s "reasoning applies to [§] 4B1.2

_____

[5]That determination is the subject of a circuit split. The First, Second, Sixth, Seventh, Eighth, and Ninth Circuits have granted applications to file second or successive § 2255 motions based on *Johnson*, at least implying its retroactivity. *See, e.g., Pakala v. United States*, 804 F.3d 139, 139 (1st Cir. 2015) (*per curiam*); *Rivera v. United States*, No. 13-4654, Docket #44 (2nd Cir. Oct. 5, 2015); *In re Watkins*, No. 15-5038, --- F.3d ----, 2015 WL 9241176 (6th Cir. Dec. 17, 2015); *Price*, 795 F.3d at 735; *Woods v. United States*, 805 F.3d 1152, 1154 (8th Cir. 2015) (*per curiam*); *United States v. Striet*, No. 15-72506, Docket #2 (9th Cir. Aug. 25, 2015). The Fifth, Tenth, and Eleventh Circuits have taken the opposite approach. *See, e.g., In re Williams*, 806 F.3d 322, 325–26 (5th Cir. 2015); *In re Gieswein*, 802 F.3d 1143 (10th Cir. 2015) (*per curiam*); *In re Franks*, No. 15-15456-G, --- F.3d ----, 2016 WL 80551 (11th Cir. Jan. 6, 2016). On January 8, 2016, the Supreme Court granted *certiorari* in *Welch v. United States*, Case No. 15-6418, to resolve the issue.

as well." *Ramirez v. United States*, 799 F.3d 845, 856 (7th Cir. 2015) (citing *United States v. Billups*, 536 F.3d 574, 579 n. 1 (7th Cir. 2008); *United States v. Upton*, 512 F.3d 394, 404 (7th Cir. 2008), *abrogated on other grounds by United States v. Miller*, 721 F.3d 435, 443 (7th Cir. 2013); *United States v. Rosas*, 410 F.3d 332, 335–36 (7th Cir. 2005)).[6]

Moreover, the Supreme Court, itself, acted in a similar way in the days following the issuance of *Johnson*, when it vacated and remanded several cases involving the guidelines' residual clause. *See, e.g.*, *Beckles v. United States*, 135 S.Ct. 2928 (June 30, 2015); *Maldonado v. United States*, 135 S.Ct. 2929 (June 30, 2015); *Smith v. United States*, 135 S.Ct. 2930 (June 30, 2015); *Denson v. United States*, 135 S.Ct. 2931 (June 30, 2015); *Talmore v. United States*, 135 S.Ct. 2937 (June 30, 2015); *Cooper v. United States*, 135 S.Ct. 2938 (June 30, 2015); *Jones v. United States*, 135 S.Ct. 2944 (June 30, 2015).

3.     THE PARTIES' ARGUMENTS

Mr. Cummings' substantive position is simple: he argues that, in light of *Johnson*, he is no longer a career offender under the guidelines and should, therefore, be resentenced using the much lower guidelines range that would have otherwise been applicable in the absence of his career offender

---

[6]With that said, the Court must also note that the issue of *Johnson*'s applicability to the guidelines' residual clause is currently pending before the Seventh Circuit in *United States v. Rollins*, No. 13-1731, and the consolidated cases of *United States v. Hurlburt*, No. 14-3611 and *United States v. Gillespie*, No. 15-1686. Those cases were argued before the Seventh Circuit on December 2, 2015, but have not yet been decided. In the meantime, the Seventh Circuit found that, even if *Johnson* applied to the guidelines, a petitioner was not entitled to relief where his conviction fell under the force clause in U.S.S.G. § 4B1.2(a)(1) (*i.e.*, it did *not* fall under the residual clause). *Dawkins v. United States*, 809 F.3d 953, 954–56 (7th Cir. 2016). *But see id.* at 956–58 (Ripple, J., dissenting, stating that the crime in question *might not* have satisfied the force clause, and urging authorization of a successive § 2255 motion).

designation.[7] There are three component parts of this argument. First, *Johnson* must be retroactive, both to make Mr. Cummings' petition timely and also to provide an available basis for relief. (Docket #1 at 5–6, 9–10). Second, *Johnson* must apply to the guidelines. (Docket #1 at 6–9). Third, *Johnson* must substantively undermine the guidelines' earlier designation of Mr. Cummings as a career offender; *i.e.*, in light of *Johnson*, Mr. Cummings must not be subject to career offender designation under U.S.S.G. § 4B1.1. (Docket #1 at 10–12). If any one of those three component parts is not the case, then Mr. Cummings' § 2255 motion must fail.

The Government essentially concedes the latter two component parts of Mr. Cummings' argument. It agrees that *Johnson* applies to the guidelines. (Docket #4 at 7–8 ("To be clear, the government agrees that *Johnson*'s holding that the ACCA's residual clause is invalid applies to the identically worded residual clause in the career-offender guideline.") (citing *United States v. Darden*, 605 F. App'x 545, 545–56 (6th Cir. 2015))). It also appears to acknowledge that *Johnson* has invalidated the guidelines' residual clause, undermining the basis for designating Mr. Cummings a career offender. (*See, e.g.*, Docket #4 at 2 ("As Cummings correctly notes, the relevant language in the career offender guideline—the catch-all language that would encompass a discharge-of-a-firearm conviction—is identical to the ACCA's 'residual clause.'"), 7 ("the government agrees that *Johnson*'s holding…applies to the identically worded residual clause in the career-offender guideline."), 8 ("In sum, *Johnson* applies…in guidelines cases on direct review.")). That position is consistent with the one the Government has taken before the Seventh

---

[7] In effect, this would entitle him to immediate release, as he has served nearly nine years of his sentence—far more than the 24–30 months guideline range that would have been applicable if he was not designated a career offender.

Circuit. *See, e.g.*, *United States v. Hurlburt*, No. 14-3611, Docket #15 at 8 (filed Sep. 23, 2015) ("The government concedes that *Johnson*…applies to the identically-worded residual-clause definition of a crime of violence in U.S.S.G. § 4B1.2(a)(2)). The government agrees with the defendant that under *Johnson*, the guidelines' residual-clause definition of a crime of violence is unconstitutionally vague…"); *United States v. Gillespie*, No. 15-1686, Docket #15 at 7 (filed Sep. 14, 2015) (same).

But the Government contests the first component part of Mr. Cummings' argument: the Government maintains that *Johnson* is not retroactively applicable to guidelines challenges. (*See, e.g.*, Docket #4 at 6–28).[8] The Government also argues that the Court need not even reach that point, because Mr. Cummings procedurally defaulted his *Johnson* challenge to the guidelines because he did not raise it on direct appeal. (Docket #4 at 2–6).

In his reply brief, Mr. Cummings contends that the Court should excuse his procedural default and find that *Johnson* applies retroactively to guidelines challenges.

---

[8]There is an important distinction to make here. The Government agrees that *Johnson* is retroactive to collateral *ACCA* challenges, but contests retroactivity to collateral *guidelines* challenges; it does not challenge *Johnson*'s applicability to both ACCA and guidelines challenges on direct review. (Docket #4 at 8). A table illustrating the Government's position serves to clarify this point:

|  | ACCA Challenge | Guidelines Challenge |
|---|---|---|
| Direct Review | *Johnson* applies | *Johnson* applies |
| Collateral Review | *Johnson* applies | *Johnson* does not apply |

According to the Government, this case falls into that bottom right quadrant.

Case 2:15-cv-01219-JPS   Filed 02/29/16   Page 11 of 36   Document 9

## 4. ANALYSIS

In light of the Government's concessions, there are really only two issues squarely before the Court:

(1)    whether Mr. Cummings defaulted his *Johnson* challenge to his guidelines designation as a career offender; and

(2)    whether *Johnson* applies retroactively to guidelines challenges.

If the Court answers "no" to the first question and "yes" to the second, then Mr. Cummings is *per se* entitled to relief in light of the Government's position.

### 4.1    Procedural Default

Mr. Cummings did not directly appeal his conviction, and so did not raise a *Johnson* claim on direct appeal. (Case No. 06-CR-199, Docket #29). In fact, although he argued before this Court that the career offender guideline should not apply to him, he did not do so on *Johnson*-style vagueness grounds. (*See, e.g.*, Case No. 06-CR-199, Docket #19 at 5–7; Case No. 06-CR-199, Docket #34 at 8:1–11:1). On this basis, the Government argues that Mr. Cummings procedurally defaulted his *Johnson* challenge to the guidelines.

Generally speaking, a defendant cannot raise an argument in a post-conviction proceeding that he did not raise earlier on direct appeal. *See, e.g.*, *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 351 (2006) (citing *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Bousley v. United States*, 523 U.S. 614, 621 (1998)). However, courts may excuse procedural default where a defendant is able to demonstrate "'cause' and actual 'prejudice.'" *Bousley*, 523 U.S. at 622 (citing *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)).

### 4.1.1   Cause for Procedural Default

Mr. Cummings argues, and the Court agrees, that cause for his procedural default exists, because it was actually futile for him to assert a *Johnson*-style claim either before this Court or on direct appeal.

In *Murray v. Litwin*, the Supreme Court noted that cause, as could excuse procedural default, requires "some objective factor external to the defense [that] impeded counsel's efforts to comply" with the procedural requirements to raise a claim. 477 U.S. 478, 488 (1986). And, *Murray* did not provide "an exhaustive catalog of such objective impediments" it noted "that a showing that the factual or legal basis for a claim was not reasonably available to counsel," could constitute the required objective impediment. *Id.* (citing *Reed v. Ross*, 468 U.S., 1, 16 (1984)). *Reed*, in turn, describes when that might occur: "where a constitutional claim is so novel that its legal basis is not reasonably available to counsel." 468 U.S. at 16.[9] In that discussion, *Reed* further described three situations in which a sufficiently novel claim may emerge:

---

[9]The Seventh Circuit has noted that *Reed* may no longer be valid law. *Richardson v. Lemke*, 745 F.3d 258, 277 and n.7 (7th Cir. 2014) ("We have observed that the Supreme Court's later decision in *Teague v. Lane*, 489 U.S. 288 (1989), 'leaves no independent role for a doctrine treating legal change as "cause."' *Prihoda v. McCaughtry*, 910 F.2d 1379, 1386 (7th Cir.1990)."), *cert. denied sub nom. Richardson v. Pfister*, 135 S. Ct. 380 (2014). Nonetheless, approximately two months ago, the Seventh Circuit invoked *Reed* as a potentially-applicable exception to procedural default without mentioning that it might no longer be good law. *McKinley v. Butler*, 809 F.3d 908, 912 (7th Cir. 2016).

> First, a decision of this Court may explicitly overrule one of our precedents. Second, a decision may overtur[n] a longstanding and widespread practice to which this Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved. And, finally, a decision may disapprov[e] a practice this Court arguably has sanctioned in prior cases.

*Reed*, 468 U.S. at 17 (internal quotations and citations omitted). *Reed* went on to say that when a case falls into one of the first two categories and is given retroactive effect, "there will almost certainly have been no reasonable basis upon which an attorney previously could" have made the defaulted argument. *Id.* When that is the case, a reviewing court should generally excuse the procedural default. *Id.*

The first situation described by *Reed* is present here: in *Johnson*, the Supreme Court overruled precedent that was in place at the time Mr. Cummings' sentence became final, specifically *James v. United States*, 550 U.S. 192 (2007). There is some question about the retroactive effect of *Johnson*, at least as to guidelines challenges on collateral review, as the Court discusses in Section 4.2.2, *infra*. But, the Court will presume for this portion of its analysis that *Johnson* applies retroactively to Mr. Cummings' challenge. Accordingly, cause for Mr. Cummings' procedural default exists under *Reed*. *See* 468 U.S. at 17.

### 4.1.2    Prejudice from Procedural Default

Mr. Cummings can clearly establish prejudice in this case. To show prejudice, a petitioner need show only that without an error, the proceedings would have been different. *Strickler v. Greene*, 527 U.S. 263, 289 (1999). In this case, if the Court had applied the correct guideline range (without the career

offender enhancement), then it would have sentenced Mr. Cummings to a lower sentence, establishing prejudice.[10]

### 4.2    *Johnson*'s Applicability to the Guidelines

The primary issue before the Court is whether *Johnson* applies retroactively to collateral challenges to the guidelines. Mr. Cummings argues that it does; the Government argues that it does not, although, as the Court has already noted, the Government has conceded the broader point that *Johnson* applies prospectively to guidelines challenges on direct appeal.

#### 4.2.1    General Applicability of *Johnson* to the Guidelines

In light of the Government's concession that *Johnson* applies prospectively to guidelines challenges, the Court has not yet addressed the issue in depth. Ultimately, the Court will adopt the Government's position, but believes it is important to provide a reasoned basis for doing so. *See United States v. Stork*, No. 3:10-CR-132, 2015 WL 8056023, at *4 (N.D. Ind. Dec. 4, 2015) ("*Stork II*") (noting that, despite a similar concession from the Government, neither party had addressed applicable Seventh Circuit law that might have negated the Government's concession, and so addressing the issue in greater detail) (citing *United States v. Tichenor*, 683 F.3d 358, 364 (7th Cir. 2012); *Saban v. U.S. Dep't of Labor*, 509 F.3d 376, 378 (7th Cir. 2007); *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004)).

---

[10]The Seventh Circuit has, however, questioned whether prejudice can actually be shown where an individual has been sentenced post-*Booker*, such that the guidelines are not mandatory. *See* Section 4.2.2, *infra.* Because the Court will discuss that issue further in Section 4.2.2, *infra*, it will presume prejudice for this portion of its analysis.

Case 2:15-cv-01219-JPS    Filed 02/29/16    Page 15 of 36    Document 9

The Court acknowledges that the Seventh Circuit still has not affirmatively decided that *Johnson* applies to the guidelines. Indeed, in *Tichenor* and several predecessor cases, the Seventh Circuit expressly held that the guidelines are not subject to vagueness attacks (which is, of course, precisely what application of *Johnson* entails). *See* 683 F.3d at 364 (quoting *United States v. Brierton*, 165 F.3d 1133, 1139 (7th Cir. 1999)). And, as already noted, the precise question of whether *Johnson* applies to the guidelines—in contravention of *Tichenor*—is currently pending before the Seventh Circuit. *See, e.g.*, *Rollins*, No. 13-1731; *Hurlburt*, No. 14-3611; *Gillespie*, No. 15-1686. For this reason, in a very well-reasoned opinion, Judge Jon DeGuilio of the Northern District of Indiana assumed but did not decide that *Tichenor* would probably prevent application of *Johnson* to a guideline challenge. *See Stork II*, 2015 WL 8056023, at *4.

This is a very difficult issue, but the Court reaches the opposite conclusion for several reasons.

First, it is not clear that *Tichenor* actually prohibits a *Johnson* challenge to the guidelines. In fact, in several separate statements, the Seventh Circuit has stated that the availability of *Johnson* to challenge the guidelines remains an *open* question, rather than a closed one. *See, e.g.*, *Ramirez*, 799 F.3d at 856 (pointing out that the Seventh Circuit has interpreted residual clause of guidelines identically to ACCA's residual clause and "proceed[ing] on the assumption that the Supreme Court's reasoning applies to section 4B1.2 as well" so as to authorize successive § 2255 petition, and stating that Seventh Circuit "leave[s] any issue about the effect of *Johnson* on the Guidelines for another day."); *Stork I*, 2015 WL 5915990, at *1 (authorizing successive § 2255 based upon *Johnson* challenge to guidelines); *Dawkins*, 89 F.3d at 954

(proceeding on assumption that *Johnson* applies to guidelines); *id.* at 956–58 (Ripple, J., dissenting) (urging more thorough analysis of *Johnson*'s applicability to the case, which would require that guidelines be subject to a *Johnson* challenge); *Rollins*, No. 13-1731, Docket #45 (7th Cir. Sep. 1, 2015) ("Rollins has not asked us to revisit *Tichenor* in light of *Johnson*. Accordingly, we do not address *Johnson's* effect on the career-offender guideline; that question remains open in this circuit.") (opinion originally published at 800 F.3d 859 (7th Cir. 2015), but later withdrawn on grant of rehearing, which remains pending).

Second, assuming that the issue is an open one, the clear weight of other circuits' authority supports application of *Johnson* to the guidelines (at least on direct review). The Sixth, Eighth, and Tenth Circuits have reached that conclusion and, in fact, implied that *Johnson* itself made clear the ability to challenge guidelines on vagueness grounds. *See, e.g., United States v. Harbin*, 610 F. App'x. 562, 562–63 (6th Cir. 2015) (defendant designated as career offender under the guidelines is "entitled to the same relief as offenders sentenced under the residual clause of the ACCA")*; United States v. Taylor*, 803 F.3d 931, 933 (8th Cir. 2015) (*per curiam*) ("[a]lthough the guidelines are not statutes, district courts must consider them," and therefore the position "that the guidelines cannot be unconstitutionally vague because they do not proscribe conduct is doubtful after Johnson"); *United States v. Madrid*, 805 F.3d 1204, 1210–11 (10th Cir. 2015) (holding the residual clause in the Guidelines unconstitutional in light of Johnson). The First Circuit has clearly implied that it finds that position persuasive. *See United States v. Soto-Rivera*, 811 F.3d 53, 62 (1st Cir. 2016). And the Second, Third, and Ninth Circuits allowed vagueness challenges to the guidelines prior to *Johnson* and

so would clearly allow a *Johnson* challenge to the guidelines. *See, e.g.*, *United States v. Savin*, 349 F.3d 27, 38 (2d Cir. 2003); *United States v. Maurer*, 639 F.3d 72 (3d Cir. 2011); *United States v. Gallagher*, 99 F.3d 329, 334 (9th Cir. 1996). Only the Eleventh Circuit has found that *Johnson* does not apply to the guidelines. *United States v. Matchett*, 802 F.3d 1185, 1193–95 (11th Cir. 2015). But as the Tenth Circuit has pointed out in implying its disagreement with the Eleventh Circuit's reasoning, the Eleventh Circuit's conclusion rested entirely on cases that predate *Johnson* and *Peugh v. United States*, --- U.S. ----, 133 S.Ct. 2072 (2013), the latter of which expressly held the guidelines were subject to constitutional challenge. *Madrid*, 805 F.3d at 1212 n.9.

And, third, that brings the Court to its final reason for adopting the Government's position that *Johnson* applies to the guidelines: *Tichenor* and all of its predecessors predated both *Peugh* and *Johnson*. The Court agrees with the Tenth Circuit's implication that *Tichenor* is no longer applicable in light of *Peugh* and *Johnson*. *See Madrid*, 805 F.3d at 1212 n.9. In that regard, the Court cannot find a single case issued by the Seventh Circuit after *Peugh* that applies *Tichenor* or its predecessors for the proposition that the guidelines are not subject to vagueness challenges.

For all of these reasons, the Court finds that *Johnson* applies to the guidelines (at least prospectively) and so adopts the Government's concession in that regard.

### 4.2.2    *Johnson*'s Retroactive Application to Collateral Challenges to the Guidelines

The above conclusion, of course, does not make any difference if *Johnson* does not apply retroactively to collateral challenges to the guidelines. And, unfortunately, the Court is obliged to find that Seventh Circuit authority compels a determination that *Johnson* does not apply retroactively

to collateral challenges to the guidelines, such as Mr. Cummings' § 2255 motion, here, despite the Court's belief that Mr. Cummings suffers a grave injustice as a result. To understand why that is the case, it is necessary to trace the Seventh Circuit's path through three cases: (1) *Narvaez v. United States*, 674 F.3d 621 (7th Cir. 2011); (2) *Hawkins v. United States*, 706 F.3d 820 (7th Cir. 2013) ("*Hawkins I*"), *opinion supplemented on denial of reh'g*, 724 F.3d 915 (7th Cir. 2013) ("*Hawkins II*"); and (3) *United States v. Coleman*, 763 F.3d 706, 707 (7th Cir. 2014), *as amended on denial of reh'g and reh'g en banc* (Oct. 16, 2014), *cert. denied*, 135 S. Ct. 1574 (2015).

*Narvaez.* The first case, *Narvaez*, would—if not for the later-decided *Hawkins* opinions—seem clearly to support *Johnson*'s retroactive applicability to the guidelines. In *Narvaez*, the Seventh Circuit held that *Begay* and *Chambers*, both precursors to *Johnson*, applied retroactively to the § 2255 motion of petitioner Luis Narvaez. 674 F.3d at 623.

Narvaez pled guilty to federal bank robbery charges in 2003. *Id.* The sentencing judge designated Narvaez a career offender under the guidelines, U.S.S.G. § 4B1.1. *Narvaez*, 674 F.3d at 623. To reach that designation, the sentencing judge found that Narvaez had earlier been convicted twice of escape from custody, in violation of Wis. Stat. § 946.42(3)(a), and that those two convictions were crimes of violence under the residual clause of U.S.S.G. § 4B1.2(a)(2). *See Narvaez*, 674 F.3d at 623–24. The career offender designation increased Narvaez's sentencing range from 100–125 months to 151–188 months. *Id.* And, because Narvaez's sentencing occurred prior to *United States v. Booker*, the applicable guideline range was mandatory. *Narvaez*, 674 F.3d at 624, 628–29 (citing *Booker*, 543 U.S. 220, 234 (2005)). The sentencing judge, accordingly, sentenced Narvaez to 170 months' imprisonment.

Later Supreme Court decisions called into question Narvaez's designation as a career offender. Five years after Narvaez had been sentenced, the Supreme Court held in *Begay* that a DUI could not satisfy the ACCA's residual clause. *See Narvaez*, 674 F.3d at 624 (citing *Begay*, 553 U.S. at 143–45, 148). And, one year after *Begay*, the Supreme Court decided in *Chambers* that an Illinois escape conviction (similar to Narvaez's) also could not satisfy the ACCA's residual clause. *See Narvaez*, 674 F.3d at 624 (citing *Chambers*, 555 U.S. at 126–30).

On the basis of those two cases, Narvaez filed a § 2255 motion, asserting that he was no longer a career offender under the guidelines and, therefore, was entitled to resentencing. *Narvaez*, 674 F.3d at 625. The district court disagreed, holding that *Begay* and *Chambers* did not apply retroactively on collateral review, and so denied the § 2255 motion. *Id.* Narvaez appealed that decision. *Id.*

On appeal, the Seventh Circuit reached three very important preliminary decisions. First, it held that *Begay* and *Chambers* applied to the guidelines, even though those two cases involved the ACCA. *Narvaez*, 674 F.3d at 624 ("Although *Begay* and *Chambers* specifically involved the ACCA, not the Sentencing Guidelines, we have recognized that the definition of a violent felony under the ACCA was 'repeated verbatim' by the Sentencing Commission in defining a 'crime of violence' in § 4B1.2 and that '[i]t would be inappropriate to treat identical texts differently just because of a different caption.'") (citing *United States v. Templeton*, 543 F.3d 378, 380 (7th Cir. 2008); *United States v. Woods*, 576 F.3d 400, 403–04 (7th Cir. 2009)). Second, it found that *Begay* and *Chambers* applied retroactively on collateral review. *Narvaez*, 674 F.3d at 625–26. The Seventh Circuit reached its retroactivity

determination after discussing the law underlying retroactivity determinations. *Id.* (citing *Bousley*, 523 U.S. at 620–21 (discussing *Teague*, 489 U.S. at 311); *Welch v. United States*, 604 F.3d 408, 415 (7th Cir. 2010), *cert. denied*, 131 S.Ct. 3019 (2011)). Nonetheless, it seems important to point out that the Government had conceded retroactivity in *Narvaez*, 674 F.3d at 625—something it has explicitly refused to do here. Third, the Seventh Circuit found that Narvaez's argument under *Begay* and *Chambers* raised a constitutional claim, because his "illegal designation as a career offender resulted in an increase in his term of imprisonment that deprived him of liberty without due process of law." *Narvaez*, 674 F.3d at 626 (quoting *Whalen v. United States*, 445 U.S. 684, 690 (1980) for the proposition that the petitioner had a "constitutional right to be deprived of liberty as punishment for criminal conduct only to the extent authorized by Congress.").

With those preliminary decisions out of the way, the Seventh Circuit turned to the merits and found that Narvaez was entitled to resentencing in light of *Begay* and *Chambers*. *Narvaez*, 674 F.3d at 627–30.

Extending that outcome to Mr. Cummings' case would seem easy: aside from the fact that Narvaez was subject to pre-*Booker* mandatory guidelines, there is practically nothing to distinguish Narvaez from Mr. Cummings. *See id.* However, *Hawkins I* picked up on that lone distinction and foreclosed the possibility of extending *Narvaez*'s holding to petitioners like Mr. Cummings.

*Hawkins I.* The *Hawkins I* court[11] faced a situation that was almost identical to the one in *Narvaez.* Like Narvaez, Bernard Hawkins had two prior felony convictions for "walkaway" escape from prison when he was prosecuted in federal court for a third crime.[12] *Hawkins I*, 706 F.3d at 821. If Hawkins had not been convicted of those two previous escapes, then he would have been subject to a guidelines range of either 15–21 months' or 24–30 months' imprisonment. *Id.* But, because of those two previous felonies, Hawkins was a career offender under the guidelines, subject to a guidelines range of 151–188 months' imprisonment. Accordingly, the sentencing judge sentenced Hawkins to 151 months' imprisonment—"far above the guidelines range that would have been applicable had the career offender guideline not been in play, [but] well below the statutory maximum for Hawkins' offense of conviction, which…was 20 years." *Id.* at 821–22.

Hawkins' sentencing occurred pre-*Booker*, but his direct appeal was still pending when the Supreme Court issued *Booker*, making the guidelines advisory. *Id.* at 822. The Seventh Circuit, therefore, vacated Hawkins' original sentence and directed the sentencing judge to resentence him. *Id.*

---

[11]In *Hawkins I*, Judge Posner wrote the majority opinion for himself and Judge Kanne. Judge Rovner dissented. Accordingly, where the Court discusses Judge Posner's majority decision, it will call it "the *Hawkins I* majority."

[12]In Mr. Hawkins' case, that third crime was assault of a U.S. Marshal, in violation of 18 U.S.C. § 111(a)(1), (b), and 1114. However, this fact had no impact on the outcome.

On remand, the sentencing judge again imposed a 151-month sentence, which the Seventh Circuit affirmed. *Id.*

Three years later, the Supreme Court decided *Chambers*, which held that certain forms of escape, including walkaway escapes like Hawkins', should not be classified as violent felonies for ACCA purposes. *Id.* (citing *Chambers*, 555 U.S. at 127–30; *United States v. Hart*, 578 F.3d 674, 681 (7th Cir. 2009); *Templeton*, 543 F.3d at 383; *United States v. Ford*, 560 F.3d 420, 426 (6th Cir. 2009)).

Hawkins—just like Narvaez—filed a § 2255 motion on the basis of *Chambers*, asserting that he was entitled to resentencing because his career-offender designation under the guidelines constituted legal error in light of *Chambers. Hawkins I*, 706 F.3d at 823. The sentencing judge rejected Hawkins' § 2255 motion, holding that the asserted legal error was not one that could be corrected on collateral review. *Id.* Hawkins appealed, pointing to *Narvaez* as controlling. *Id.* (citing *Narvaez*, 674 F.3d at 629–30).

The *Hawkins I* majority voted to affirm, distinguishing *Narvaez* from Mr. Hawkins' situation, primarily because Narvaez had been sentenced pre-*Booker* when the guidelines were mandatory, whereas Hawkins was sentenced post-*Booker* when the guidelines were merely advisory. *Hawkins I*, 706 F.3d at 822 (citing *Narvaez*, 674 F.3d at 628–29; *Brown v. Rios*, 696 F.3d 638, 640 (7th Cir. 2012); *United States v. Wyatt*, 672 F.3d 519, 523 (7th Cir. 2012)). The *Hawkins I* majority found that fact particularly important, because it meant that, "arguabl[y]," Narvaez's "sentence exceeded the maximum authorized by 'law,'" given that the then-mandatory guidelines "were the practical equivalent of a statute." *Hawkins I*, 706 F.3d at 822 (citing *Narvaez*, 674 F.3d at 628–29; *Scott v. United States*, 997 F.2d 340, 341 (7th Cir. 1993)). On

the other hand, for Hawkins, the "guidelines no longer b[ou]nd the sentencing judge." *Hawkins I*, 706 F.3d at 822. In fact, post-*Booker*, the sentencing judge could not "even *presume* that a sentence within the applicable guidelines range would be proper," and was instead required to consider the sentencing factors in 18 U.S.C. § 3553(a), imposing a guidelines sentence only if appropriate after considering those factors. *Hawkins I*, 706 F.3d at 822 (emphasis in original) (citing *Nelson v. United States*, 555 U.S. 350, 351–52 (2009); *Rita v. United States*, 551 U.S. 338, 351 (2007)). According to the *Hawkins I* majority, *Booker* made all of the sentencing guidelines—including the career offender guidelines—"less important," insofar as it made them "merely advisory" and required an independent § 3553(a) analysis. *Hawkins I*, 706 F.3d at 822–23 (citing *United States v. Corner*, 598 F.3d 411, 415 (7th Cir. 2010) (*en banc*)). And so, where Hawkins was re-sentenced to the same 151-month sentence post-*Booker*, when the sentencing judge "*well knew*" that the guidelines were merely advisory, his sentence was not unlawful, unlike Narvaez's. *Hawkins I*, 706 F.3d at 823 (emphasis in original).

The *Hawkins I* majority explained further that the post-*Booker* misapplication of a guidelines range was not "corrigible" in a collateral challenge. *Id.* In reaching that conclusion, the *Hawkins I* majority noted that Hawkins' § 2255 motion could not succeed unless *Chambers* applied to his situation retroactively. *See id.* at 823–24 (citing *Teague*, 489 U.S. at 308–10). "[S]uch retroactivity is disfavored because it thwarts finality in the criminal process," and could require a huge amount of resentencings if § 2255 motions were corrigible whenever a higher court changed its interpretation of a guideline. *Hawkins I*, 706 F.3d at 824. Thus, the broad interest in finality of

convictions—avoiding a flood of § 2255 motions whenever a court changed a guideline—was very high.

The *Hawkins I* majority used that interest in finality to distinguish *Narvaez*. It noted that "[f]inality is an important social value, but not important enough to subject a defendant to 'a punishment that the law cannot impose upon him'…such as a sentence that exceeds the statutory maximum sentence for his crime or a guidelines ceiling that has the force of a statute because the judge is forbidden to exceed it [*i.e.*, a pre-*Booker* sentence]." *Hawkins I*, 706 F.3d at 824 (quoting *Schriro v. Summerlin*, 542 U.S. 348, 352 (2004); citing *Narvaez*, 674 F.3d at 626; *Welch*, 604 F.3d at 413–14; *United States v. Shipp*, 589 F.3d 1084, 1089, 1091 (10th Cir. 2009)). In other words, the error in *Narvaez*—which induced the erroneous application of guidelines that had the force of law—was sufficient to overcome the interest in finality. *See Hawkins I*, 706 F.3d at 824.[13] But, "[a]n error in the interpretation of a merely advisory guideline is less serious. Given the

---

[13]In doing so, the *Hawkins I* majority assumed, without explicitly stating, that a Supreme Court decision could be retroactive to a guidelines challenge in one instance (*Narvaez*) but not another (*Hawkins I*).

interest in finality, it is not a proper basis for voiding a punishment lawful when imposed."[14] *Id.*

In short, the single distinction between *Narvaez* and *Hawkins*—the advisory nature of the guidelines post-*Booker*—is material and prevented the award of § 2255 relief to Hawkins. And, unfortunately for Mr. Cummings, that is also precisely the same difference between him and *Narvaez*. Accordingly, *Narvaez* squarely forecloses the availability of relief to Mr. Cummings.

Judge Rovner, dissenting in *Hawkins I*, would have it the other way. Quoting from *Narvaez*, she asserted that the *Narvaez* court was much more concerned with the branding of a defendant as a career offender "'deserving of far greater punishment than that usually meted out for an otherwise similarly situated individual who had committed the same offense.'" *Hawkins I*, 706 F.3d at 826 (Rovner, J., dissenting) (quoting *Narvaez*, 674 F.3d

---

[14]The *Hawkins I* majority went on to point out that the guidelines exert a "gravitational pull" on sentencing, such that the sentencing judge

> might have given Hawkins a lower sentence had *Chambers* been decided earlier. *But he would not have been required to do so and we don't think that a sentence that is well below the ceiling imposed by Congress whether directly or by delegation to the Sentencing Commission should, as Hawkins argues, be considered a "miscarriage of justice" that can be collaterally attacked*, just because the judge committed a mistake en route to imposing it. That's the balance the cases strike between the interest in finality and the injustice of a possibly mistaken sentence.

*Hawkins I*, 706 F.3d at 825 (emphasis added) (citing *United States v. Addonizio*, 442 U.S. 178, 186 (1979); *United States v. Timmreck*, 441 U.S. 780, 784 (1979); *Hill v. United States*, 368 U.S. 424, 428 (1962); *Scott*, 997 F.2d at 342; *United States v. Mikalajunas*, 186 F.3d 490, 495–96 (4th Cir. 1999)). The *Hawkins I* majority acknowledged that Hawkins' sentence was erroneous and probably would have been corrected on direct review, "[b]ut reversible on appeal doesn't mean reversible in postconviction proceedings." *Hawkins I*, 706 F.3d at 825.

Case 2:15-cv-01219-JPS   Filed 02/29/16   Page 26 of 36   Document 9

at 629). Judge Rovner did not believe that the *Narvaez* court was "assuaged by the fact that the defendant's sentence fell below the applicable statutory maximum sentence." *Hawkins I*, 706 F.3d at 826. Instead, Judge Rovner believed that the illegality of Hawkins' sentence attached when the sentencing judge erred by designating Hawkins a career offender: in light of the powerful pull of the sentencing guidelines, Hawkins would almost assuredly not have received a 151-month sentence if the sentencing judge had applied the correct guidelines. *Id.* at 827–28. "It [was] one thing for a judge to say, five years later, that he would have sentenced Hawkins to 151 months regardless, and another for him to actually begin with a 15–21 month range and then decide to increase the sentence by another decade." *Id.* at 832.

*Hawkins II*. Several months after the Seventh Circuit issued *Hawkins I*, the Supreme Court issued *Peugh*, and Hawkins requested rehearing in light of *Peugh*. *Hawkins II*, 724 F.3d at 916. The Seventh Circuit issued a supplemental opinion ("*Hawkins II*"), denying the request for rehearing. *Id.* at 919. The panel split the same way as in *Hawkins I*, with Judge Posner writing the majority opinion for himself and Judge Kanne, against Hawkins' request for relief, and with Judge Rovner dissenting. *See Hawkins II*, 724 F.3d at 919.

The *Hawkins II* majority described *Peugh*'s significance to Hawkins' case in the following way:

> *Peugh* holds that a sentence violates the Constitution's ex post facto clause if in calculating the defendant's advisory guidelines range (as the judge is required to do even though he can if he wants sentence the defendant outside that range) the judge had calculated the range in effect when he sentenced the defendant, rather than when the defendant committed the crime for which he's being sentenced, if the earlier range was lower (less punitive). The arguable significance of *Peugh* for the

present case is that the Court held that an error in calculating a merely advisory guidelines range nevertheless invalidated the sentence.

*Hawkins II*, 724 F.3d at 916 (internal citation omitted).

The *Hawkins II* majority determined that *Peugh* had no impact upon Hawkins' case for three reasons. First, "*Peugh* involved constitutional error—a violation of the ex post facto clause," whereas *Hawkins I* and *Hawkins II* involved only error in a guidelines calculation.[15] *Hawkins II*, 724 F.3d at 916–17. Second, *Peugh* presented a direct appeal to the Supreme Court, and so the Supreme Court applied a lower standard of review than would be applicable to Hawkins (or to Mr. Cummings, here, for that matter). Third, the Supreme Court did not make *Peugh* retroactive, and in fact stated that "'failing to calculate the correct Guidelines range constitutes procedural error,'" *Hawkins II*, 724 F.3d at 917 (quoting *Peugh*, 133 S.Ct. at 2083), so, in the absence of a sentence above a statutory maximum (including a sentence exceeding pre-*Booker* guidelines, as in *Narvaez*), neither *Peugh* nor *Chambers* nor any other guidelines challenge would be corrigible, as none would rest upon retroactively-applicable law, *see Hawkins II*, 724 F.3d at 917–18.

The *Hawkins II* majority concluded with an extensive discussion of the importance of finality, and the need to avoid retroactive application to

---

[15]The Court questions whether this remains a valid distinction after *Johnson*. *Johnson* held that the ACCA's residual clause was unconstitutionally vague, and so presumably *Peugh* allows a guidelines challenge to the constitutional vagueness of the career offender guideline. In other words, if it was constitutionally problematic in *Peugh* for a sentencing court to calculate a guidelines sentence using later-dated sentencing guidelines, then it seems equally constitutionally problematic to calculate a guidelines sentence using vague guidelines, as occurred in both *Johnson*'s and Mr. Cummings' case. However, this distinction probably has no effect because *Peugh* has not been made retroactive. *See, e.g.*, *Herrera-Gomez v. United States*, 755 F.3d 142 (2d Cir. 2014).

guidelines challenges of cases like *Peugh* and *Chambers*—a range of cases that would presumably include *Johnson*. *See Hawkins II*, 724 F.3d at 918–19.

Judge Rovner filed a dissenting opinion, highlighting portions of *Peugh* that she believed conflicted with the majority's opinions in *Hawkins I* and *Hawkins II*. She pointed out that in *Hawkins I*, "[t]he one and only question for which we lacked a definitive answer was whether the holding in *Narvaez* could be applied in post-conviction cases after *Booker*—that is, when the Guidelines were no longer mandatory. In the panel opinion, this was the critical (and only) distinction between *Narvaez* and this case." *Hawkins II*, 724 F.3d at 919–20 (Rovner, J., dissenting). The *Peugh* decision, Judge Rovner said, "rejected just this distinction, instructing that the advisory nature of the Guidelines and the presence of discretion do not alleviate infirmities that arise when a sentencing court chooses the improper Guideline range as a starting point." *Hawkins II*, 724 F.3d at 920 (citing *Peugh*, 133 S.Ct. at 2086). Judge Rovner believed, based upon language from *Peugh*, that the guidelines were subject to review of the sort in *Peugh* given their extreme importance in today's sentencing regime: for various reasons, "[t]he effect of the Guidelines…is strong and anchoring." *Hawkins II*, 724 F.3d at 920 (citing *Peugh*, 133 S.Ct. at 2079, 2083, 2087; *Gall v. United States*, 552 U.S. 38, 49–50 (2007)). Given that powerful effect, Judge Rovner believed that Hawkins' claim should have been cognizable as a miscarriage of justice in § 2255 collateral proceedings. *Hawkins II*, 724 F.3d at 921–22. Judge Rovner then distinguished *Peugh*'s statement regarding the procedural nature of guidelines challenges, and closed by arguing that Hawkins' interest in receiving a correct sentence should outweigh the majority's emphasis on finality. *Hawkins II*, 724 F.3d at 922–25.

After the Seventh Circuit issued *Hawkins II*, Hawkins requested rehearing *en banc*, which a divided panel denied. *Hawkins III*, 725 F.3d 680 (7th Cir. 2013). Five judges (Judges Posner, Easterbrook, Kanne, Sykes, and Tinder) opposed rehearing *en banc*; four judges (Judges Rovner, Hamilton, Williams, and Wood) favored it and dissented from the denial for the reasons that Judge Rovner laid out in her *Hawkins II* dissent. *Hawkins III*, 725 F.3d at 680. Notably, Judges Kanne and Sykes, both of whom were on the *Narvaez* panel, opposed rehearing *Hawkins*.

*Coleman.* The Seventh Circuit's denial of rehearing *en banc* in *Hawkins* effectively cemented the holdings of the two opinions from that case. Thus, in *Coleman*, when another case came before the Seventh Circuit presenting practically identical questions, the result was foregone: § 2255 relief was not available to remedy an error in career offender designation under the guidelines. *See* 763 F.3d at 711. Indeed, Judge Rovner, who had dissented in both *Hawkins I* and *Hawkins II* together with the denial of rehearing *en banc*, wrote for the unanimous court in *Coleman*, and agreed that *Hawkins I* and *Hawkins II* were the law of the circuit and compelled the denial of § 2255 relief. *Coleman*, 763 F.3d at 709–11.

*Coleman* presented the Seventh Circuit with a practically identical question to *Hawkins I* and *Hawkins II*, though from a slightly difference angle. Quadale Coleman pled guilty to possession with intent to distribute crack cocaine. *Coleman*, 763 F.3d at 707. He was subject to a 40-year maximum on that charge, as a result of the drug quantity. *Id.* The sentencing judge also determined that Coleman was a career offender under the guidelines as a result of two state convictions for possession with intent to distribute cocaine base and sexual assault of a child, respectively. *Id.* That career-offender

designation resulted in a guideline range of 188-235 months; without the career-offender designation, Coleman would have been subject to a guideline range of 140–175 months. *Id.* The sentencing judge imposed a sentence of 225 months imprisonment, near the high end of the guideline range applicable as a result of the career-offender designation.

After the imposition of that sentence, the Seventh Circuit decided in *United States v. McDonald* that sexual assault of a child (at least of the sort that Coleman had been convicted of) could not form the basis for a guidelines career-offender designation following *Begay*. *See Coleman*, 763 F.3d at 707–08 (citing *McDonald*, 592 F.3d 808, 813–14 (7th Cir. 2010); *Begay*, 553 U.S. at 144–45). *McDonald* effectively undermined the basis for Coleman's designation as a career offender; if the sexual assault could not be counted as a violent crime, he did not qualify as a career offender.

On that basis, Coleman filed a § 2255 petition, and that is where his case deviated slightly from *Hawkins I* and *Hawkins II*: whereas the sentencing judge had denied Hawkins' § 2255 motions, Coleman's sentencing court[16] actually *granted* his § 2255 motion. *See Coleman*, 763 F.3d at 707–08. And, following its grant of § 2255 relief, the sentencing court re-calculated Coleman's applicable guidelines range without the career-offender designation. *Id.* at 708.

The Government appealed, arguing that the two opinions from *Hawkins* squarely foreclosed Coleman's right to § 2255 relief; the *Coleman* court agreed. *Coleman*, 763 F.3d at 708–11. First, it found that the reasoning of *Hawkins I* and *Hawkins II* was both on point and the binding law of the

---

[16]Mr. Coleman's § 2255 motion was heard by a different district judge than had conducted the original sentencing. *Coleman*, 763 F.3d at 709.

circuit. *Coleman*, 763 F.3d at 708–09. Second, it found that there was not yet a split in circuit authority on the holding in the *Hawkins* opinions. *Coleman*, 763 F.3d at 709. While panel opinions from the Fourth Circuit and Eleventh Circuit had reached contrary holdings, those opinions had been vacated for rehearing *en banc*; meanwhile, the Eighth Circuit had expressly agreed with the *Hawkins* opinions in an *en banc* decision. *Coleman*, 763 F.3d at 709 (citing *Whiteside v. United States*, 748 F.3d 541 (4th Cir. 2014) (vacated for rehearing *en banc*); *Spencer v. United States*, 727 F.3d 1076 (11th Cir. 2013) (vacated for rehearing *en banc*); *Sun Bear v. United States*, 644 F.3d 700 (8th Cir. 2011) (*en banc*)). Third, the fact that the sentencing court had actually imposed a lower sentence at Coleman's resentencing did not make any difference. *Coleman*, 763 F.3d at 709–10. On that point, the *Coleman* court pointed out that even if Coleman had been given a lower sentence, thereby implying that his original sentence was not harmless, the *Hawkins* opinions would still foreclose § 2255 relief in cases like Coleman's regardless of the harm.[17] *Coleman*, 763 F.3d at 710. And, after dispatching several other minor differences, the *Coleman* court ultimately sided with the Government, holding that the *Hawkins* opinions controlled and prohibited § 2255 relief to Coleman on the basis of the guidelines' career-offender designation. *Coleman*, 763 F.3d at 710–11.

---

[17]And this does not mention several facts that would undermine the harmfulness analysis: (1) that the resentencing judge was different than the original sentencing judge; (2) that the resentencing judge considered information about the defendant's post-conviction activities, which would not have been available to the original sentencing judge; and (3) that the resentencing judge expressed serious concerns about the "disturbing" nature of the defendant's sexual assault conviction. *Coleman*, 763 F.3d at 709–10.

Synthesis. So, where does Mr. Cummings' request for relief stand in light of the Seventh Circuit's opinions in *Narvaez*, *Hawkins*, and *Coleman*?

Quite clearly, the two *Hawkins* opinions, as reaffirmed in *Coleman*, absolutely prevent this Court from granting Mr. Cummings' § 2255 motion. *Narvaez* does not apply, because: (1) Mr. Cummings was sentenced post-*Booker*; and (2) Mr. Cummings was subject to a 20-year maximum, *see* 21 U.S.C. § 841(b)(1)(C), and therefore his 180-month sentence is not unlawful. *See Hawkins I*, 706 F.3d at 823–25 (distinguishing *Narvaez* in practically-identical circumstances). And, in *Narvaez*'s absence, the panel opinions in *Hawkins* and *Coleman* fill the void, holding that § 2255 relief is not corrigible in the precise circumstances Mr. Cummings presents.

That is unfortunate because it leaves Mr. Cummings with a sentence that he does not deserve under the law as it now stands. The Court would certainly resentence Mr. Cummings to a lower sentence if able to now, knowing that a much lower guideline range would apply because Mr. Cummings would no longer be a career offender. The interest in finality[18] would not seem to this Court to outweigh a sentence that is approximately six times[19] too high, when *Johnson* strongly implies that the basis for that

---

[18]The Court also points out that the interest in finality did not prohibit the correction of an improperly-imposed guidelines sentence in *Purvis v. United States*, 662 F.3d 939, 942 (7th Cir. 2011) (relying on *Johnson v. United States*, 544 U.S. 295, 302 (2005) (entirely different from the *Johnson* decision that forms the basis for the motion now before the Court), to allow resentencing where the *fact* of an underlying conviction was undermined when that underlying conviction was vacated—as opposed to the *legal status* of an underlying conviction being altered, as is the case here).

[19]If the Court had used the correct guideline range, Mr. Cummings would have been subject to a maximum of 30 months, or one-sixth of the 180-month sentence the Court actually imposed.

sentence—the career offender guideline—is probably unconstitutionally vague.

Nonetheless, this may not be the end of the line for Mr. Cummings. To begin, the Court points out that a panel from the Third Circuit has reached a decision contrary to the *Hawkins* majorities and more in line with *Narvaez* and Judge Rovner's *Hawkins* dissents. *United States v. Doe*, 810 F.3d 132, 157, 159–60 (3d Cir. 2015).[20] Indeed, this Court finds Judge Rovner's two *Hawkins* dissents to be extremely persuasive. Moreover, *Narvaez*, *Hawkins*, and *Coleman* were all decided pre-*Johnson*. And it is simply unclear, at this juncture, just how far *Johnson* will reach. *Johnson* could represent a seismic shift for the guidelines, both going forward[21] and on collateral review. Or, *Johnson* could have no retroactive application to prior career offender guideline determinations. Simply put, there is ample room for disagreement amongst reasonable jurists on this issue, and *Johnson* has only complicated matters further. In the end, the Seventh Circuit and, perhaps, the Supreme Court will have to sort everything out.

In light of the unsettled nature of the issues under consideration, the Court will grant a certificate of appealability ("COA") to Mr. Cummings. *See* Rule 11 of the Rules Governing § 2255 Cases in the United States District Courts. The Court should grant Mr. Cummings a COA if it finds that he "has

---

[20]Still, the great weight of authority from the circuits falls most closely in line with the opinions in *Hawkins*. *See, e.g.*, *Whiteside v. United States*, 775 F.3d 180 (4th Cir. 2010) (*en banc*); *Sun Bear*, 611 F.3d at 931; *Gilbert v. United States*, 640 F.3d 1293 (11th Cir. 2011) (*en banc*); *Spencer v. United States*, 773 F.3d 1132 (11th Cir. 2011) (*en banc*). However, with that said, the Court notes that each of those *en banc* decisions carried vigorous dissents and were decided pre-*Johnson*.

[21]The Sentencing Commission seems to believe so, in light of its attempts to revise the career offender guideline, although this is of little solace to Mr. Cummings.

made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), such that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted). Clearly, in this case, reasonable jurists could disagree over whether Mr. Cummings' *Johnson* claim is cognizable on direct appeal (with the retroactivity[22] of *Johnson* to collateral guidelines challenges subsumed in that question). If so, he is almost certainly entitled to relief, and this Court stands ready to resentence him, most likely to a sentence that would result in immediate release in light of a significantly lower guideline sentencing range.

5.      CONCLUSION

For the foregoing reasons, the Court is obliged to deny Mr. Cummings' § 2255 motion. Nonetheless, finding that Mr. Cummings' arguments clearly deserves encouragement to proceed further, the Court will grant him a certificate of appealability.

Finally, having reached its decision on Mr. Cummings' § 2255 motion purely on the legal merits of his argument, the Court does not need to hold a hearing. It will, therefore, deny Mr. Cummings' motion for a hearing. (Docket #8).

---

[22]It seems that the Seventh Circuit would not find *Johnson* to be retroactive under the same sort of cognizability analysis used in both *Hawkins* opinions. And this lack of retroactivity could flow backwards to infect the timeliness of Mr. Cummings petition, *see* 28 U.S.C. § 2255(f)(3), and also prevent application of the cause-and-prejudice exception to his procedural default under *Reed* (as in that case, cause for actual futility appears to require a retroactively-applicable decision of the Supreme Court).

Accordingly,

IT IS ORDERED that Mr. Cummings' motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Docket #1) be and the same is hereby DENIED;

IT IS FURTHER ORDERED that a certificate of appealability be and the same is hereby GRANTED as more fully discussed in the body of the Court's order;

IT IS FURTHER ORDERED that Mr. Cummings' motion for a hearing (Docket #8) be and the same is hereby DENIED; and

IT IS FURTHER ORDERED that this action be and the same is hereby DISMISSED with prejudice.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 29th day of February, 2016.

BY THE COURT:

J.P. Stoltmueller
U.S. District Judge